# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## BIG STONE GAP DIVISION

| | | |
|---|---|---|
| **TINA M. CULBERTSON,** | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Civil Action No. 2:06cv00073 |
| | ) | **MEMORANDUM OPINION** |
| **MICHAEL J. ASTRUE**, | ) | |
| **Commissioner of Social Security,**[1] | ) | By: PAMELA MEADE SARGENT |
| Defendant | ) | United States Magistrate Judge |

In this social security case, I affirm the final decision of the Commissioner denying benefits.

## I. Background and Standard of Review

Plaintiff, Tina M. Culbertson, filed this action challenging the final decision of the Commissioner of Social Security, ("Commissioner"), denying plaintiff's claim for disability insurance benefits, ("DIB"), under the Social Security Act, as amended, ("Act"), 42 U.S.C.A. § 423 (West 2003 & Supp. 2007). Jurisdiction of this court is pursuant to 42 U.S.C. § 405(g). This case is before the undersigned magistrate judge upon transfer pursuant to the consent of the parties under 28 U.S.C. § 636(c)(1).

The court's review in this case is limited to determining if the factual findings of the Commissioner are supported by substantial evidence and were reached through

---

[1] Michael J. Astrue became Commissioner of Social Security on February 12, 2007, and is therefore, substituted for Jo Anne. B. Barnhart as the defendant in this case pursuant to Federal Rule of Civil Procedure 25 (d)(1).

-1-

application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence has been defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence, but may be somewhat less than a preponderance." *Laws v. Celebrezze,* 368 F.2d 640, 642 (4th Cir. 1966). "'If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."'" *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting *Laws*, 368 F.2d at 642).

The record shows that Culbertson filed her application for DIB on April 2, 2004, alleging disability as of June 25, 2003, based on headaches, vision problems, vertigo, polymyalgia, depression, anxiety, nerves and weight gain.[2] (Record, ("R."), at 441-43, 467.) The claim was denied initially and upon reconsideration. (R. at 415-17, 420, 421-24.) Culbertson then requested a hearing before an ALJ. (R. at 425.) The ALJ held a hearing on October 13, 2005, at which Culbertson was represented by counsel. (R. at 389-400.)

By decision dated January 26, 2006, the ALJ denied Culbertson's claim. (R. at 370-86.) The ALJ found that Culbertson met the disability insured status requirements

---

[2]Culbertson filed a prior DIB application on April 1, 2002, alleging disability as of April 30, 2001. (R. at 77-79.) This claim was denied initially and upon reconsideration. (R. at 60-62, 63, 65-66.) Culbertson then requested a hearing before an administrative law judge, ("ALJ"), (R. at 68), and a hearing was held on May 22, 2003. (R. at 326-58.) By decision dated June 24, 2003, the ALJ denied Culbertson's claim. (R. at 41-49, 404-12.) Culbertson pursued her administrative appeals, (R. at 36), but the Appeals Council denied her request for review. (R. at 5-6.) Culbertson then filed an action in this court, (Civil Action No. 2:04cv00025), seeking review of the unfavorable decision. By opinion and order entered June 28, 2005, the court affirmed the decision denying benefits.

-2-

of the Act for DIB purposes through the date of the decision. (R. at 385.) The ALJ found that Culbertson had not engaged in substantial gainful activity at any time since June 25, 2003. (R. at 385.) The ALJ also found that the medical evidence established that Culbertson suffered from severe impairments, namely headaches, pain syndrome and depression, but he found that Culbertson did not have an impairment or combination of impairments listed at or medically equal to one listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 385.) The ALJ found that Culbertson's allegations were not totally credible. (R. at 385.) The ALJ found that Culbertson retained the residual functional capacity to perform unskilled, low-stress light work[3] that allowed a sit/stand option, that did not require her to climb ladders, scaffolds or ropes, that did not expose her to work hazards, that limited her to indoor work and that required only occasional contact with the public. (R. at 385.) Thus, the ALJ found that Culbertson was unable to perform her past relevant work. (R. at 385.) Based on Culbertson's age, education, work history and residual functional capacity and the testimony of a vocational expert, the ALJ found that Culbertson could perform jobs existing in significant numbers in the national economy, such as a nonpostal worker and a hand packer. (R. at 385.) Thus, the ALJ found that Culbertson was not disabled under the Act and was not eligible for benefits. (R. at 385-86.) *See* 20 C.F.R. § 404.1520(g) (2007).

After the ALJ issued his decision, Culbertson pursued her administrative appeals, (R. at 365), but the Appeals Council denied her request for review. (R. at

---

[3]Light work involves lifting items weighing up to 20 pounds at a time with frequent lifting or carrying of items weighing up to 10 pounds. If an individual can do light work, she also can do sedentary work. *See* 20 C.F.R. § 404.1567(b) (2007).

359-62.) Culbertson then filed this action seeking review of the ALJ's unfavorable decision, which now stands at the Commissioner's final decision. *See* 20 C.F.R. § 404.981 (2007). This case is before the court on Culbertson's motion for summary judgment filed July 2, 2007, and the Commissioner's motion for summary judgment filed August 1, 2007.

## II. Facts

Culbertson was born in 1963, (R. at 77, 330), which classifies her as a "younger person" under 20 C.F.R. § 404.1563(c). Culbertson has a tenth-grade education and past work experience as a cashier, a cook, a waitress and a manager. (R. at 94, 105, 330, 448, 473.) Culbertson stated that she was involved in a motor vehicle accident in April 2001. (R. at 334.) She stated that, since that time, she had suffered from chronic headaches, numbness in the left side of her face and body, nervousness and depression. (R. at 335-36.)

Cathy Sanders, a vocational expert, was present and testified at Culbertson's hearing. (R. at 395-99.) Sanders was asked to consider a hypothetical individual of Culbertson's age, education and work experience, who had the residual functional capacity to perform unskilled, low-stress light work with a sit/stand option, who could not climb ladders, ropes or scaffolds, who could not work around hazardous environments, who was restricted to working indoors and who could have no more than occasional contact with the public. (R. at 396.) Sanders testified that such an individual could perform jobs that existed in significant numbers in the national economy, including those of a hand packager, a nonpostal sorter and a laundry folder. (R. at 396.) When asked if the individual was limited as indicated by the assessment

of William B. Haynes Jr., Sanders stated that there were no jobs available that such an individual could perform. (R. at 398, 554-55.)

In rendering his decision, the ALJ reviewed medical records from Dr. Thomas E. Roatsey, D.O.; Cumberland Mountain Community Services; Russell County Medical Center; Johnston Memorial Hospital; Julie Jennings, Ph.D., a state agency psychologist; Hugh Tenison, Ph.D., a state agency psychologist; Dr. Gail J. Grau, O.D.; Dr. James E. Grau Jr., O.D.; Dr. R. Scott Macdonald, M.D.; Dr. Donald R. Williams, M.D., a state agency physician; Dr. Randall Hays, M.D., a state agency physician; Russell County Schools; Sharon J. Hughson, Ph.D., a clinical psychologist; Jeffrey H. Leblang, Ph.D., a licensed clinical psychologist; Sharon Hall, L.C.S.W., a licensed clinical social worker; Abingdon Obstetrics and Gynecology; Abingdon Surgical Associates; Indian Path Medical Center; Wellmont Holston Valley Medical Center; Dr. Frank M. Johnson, M.D., a state agency physician; Dr. Richard M. Surrusco, M.D., a state agency physician; Joseph Leizer, Ph.D., a state agency psychologist; Howard Leizer, Ph.D., a state agency psychologist; William E. Stanley, M.Ed., a licensed psychological examiner; Donald Hiers, Ph.D., a licensed psychologist; Dr. Paul Derden, M.D.; Dr. Furrukh S. Malik, M.D.; and William B. Haynes Jr., M.Ed., a licensed professional counselor. Culbertson's attorney also submitted medical records from Dr. William Mark Handy, M.D., to the Appeals Council.[4]

---

[4]Since the Appeals Council considered this evidence in reaching its decision not to grant review, (R. at 5-6), this court also should consider this evidence in determining whether substantial evidence supports the ALJ's findings. *See Wilkins v. Sec'y of Dep't of Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991).

On June 7, 2000, a CT scan of Culbertson's head was performed at Johnston Memorial Hospital, ("Johnston Memorial"), which was normal. (R. at 163.) On January 21, 2003, Culbertson presented to the emergency room at Johnston Memorial with complaints of chest pressure, left shoulder pain and tingling and burning in the left side of her face, neck, arm and hand. (R. at 542-46.) Chest x-rays showed evidence of old granulomatous disease. (R. at 545.) She was diagnosed with chest pain, etiology unclear, and abnormal electrocardiogram, ("EKG"). (R. at 542.) On July 22, 2004, Culbertson presented to the emergency room with complaints of numbness in the left side of her face, neck and arm and headaches. (R. at 579-84.) Culbertson was well-oriented, and her affect and mood were normal. (R. at 581.) She had 4/5 weakness of her left upper and lower extremities. (R. at 581.) Culbertson had no sensory deficits, her reflexes were normal, her neck was supple, she had regular heart rate and rhythm and she had normal range of motion of her extremities without edema. (R. at 581.) A cranial CT scan and an EKG were normal. (R. at 582-83.) Culbertson was diagnosed with probable classic migraine. (R. at 581.)

On September 20, 2004, Culbertson presented to the emergency room at Johnston Memorial with complaints of abdominal pain/flank pain. (R. at 568-78.) She was in no acute distress and had a regular heart rate and rhythm, a straight leg raising test was negative, and her mood and affect were normal. (R. at 570.) She was diagnosed with probable sciatica. (R. at 570.) On September 8, 2005, Culbertson was admitted to Johnston Memorial for complaints of chest pain and neck pain. (R. at 633-58.) An MRI of Culbertson's brain was normal, as was a CT scan of her head. (R. at 642-43.) An EKG was basically unremarkable, and a carotid doppler study showed no significant stenosis. (R. at 641, 655.) Culbertson was discharged on September 10,

2005, with a diagnosis of transient ischemic attack symptoms, anxiety disorder, hyperventilation, vertigo, hyperlipidemia, depression, gastroesophageal reflux disease, psoriasis and erythrocytosis.[5] (R. at 633.) It was recommended that she follow a low-fat diet and increase her exercise. (R. at 635.) On February 23, 2006, Culbertson was admitted for complaints of tingling and weakness on her left side and chest pressure. (R. at 710-30.) An ultrasound of Culbertson's chest was normal, as was a CT scan of her head. (R. at 718-19.) An MRI of Culbertson's lumbar spine also was normal. (R. at 730.) She was discharged with a diagnosis of transient ischemic attack, chest pain, headaches, anxiety, depression and vertigo. (R. at 710.) No restrictions were placed on her activities. (R. at 710.) On August 3, 2006, Culbertson presented to the emergency room with complaints of chest pain, headaches, left side numbness, speech difficulty, lightheadedness and weakness. (R. at 698-706.) She was diagnosed with chest pain, etiology unclear. (R. at 705.)

Culbertson sought treatment from Cumberland Mountain Community Services, ("Cumberland Mountain"), for an acute exacerbation of anxiety beginning in January 2001. (R. at 525.) After an initial assessment for service planning on February 5, 2001, Culbertson did not return until October 1, 2002. (R. at 509-25.) On October 1, 2002, Culbertson was diagnosed with major depressive disorder. (R. at 140.) She was not seen again until May 6, 2003,[6] and, at that time, she saw Jeffrey H. Leblang,

---

[5]Erythrocytosis is any absolute increase in the total red cell mass secondary to any of a number of nonhema topoietic systemic disorders in response to a known stimulus. *See* DORLAND'S ILLUSTRATED MEDICAL DICTIONARY, ("Dorland's"), 579 (27th ed. 1988.)

[6]Culbertson cancelled appointments on October 22, 2002; October 25, 2002; November 15, 2002; November 18, 2002; November 22, 2002; November 25, 2002; December 2, 2002; December 5, 2002; January 21, 2003; and January 24, 2003. (R. at 504-09.)

Ph.D., a licensed clinical psychologist, for her complaints of depression and anxiety. (R. at 293, 502.) On May 20, 2003, Leblang completed a mental assessment indicating that Culbertson had an unlimited ability to follow work rules. (R. at 298-300, 660-62.) He indicated that Culbertson had an unlimited to limited, but satisfactory, ability to understand, remember and carry out simple instructions. (R. at 298-99, 660-61.) He indicated that Culbertson had a limited, but satisfactory, ability to function independently and to maintain attention and concentration. (R. at 298, 660.) Leblang indicated that Culbertson had a limited, but satisfactory, to a seriously limited, but not precluded, ability to maintain personal appearance. (R. at 299, 661.) He indicated that Culbertson had a seriously limited, but not precluded, ability to relate to co-workers, to deal with the public, to use judgment, to interact with supervisors, to deal with work stresses, to understand, remember and carry out detailed instructions, to behave in an emotionally stable manner and to demonstrate reliability. (R. at 298-99, 660-61.) He also indicated that Culbertson had no useful ability to understand, remember and carry out complex instructions. (R. at 299, 661.) Leblang indicated that he had only met with Culbertson on two occasions, and, thus, had a limited database from which to rate her functioning. (R. at 300, 662.)

On April 22, 2004, Culbertson reported a lot of financial stressors due to hospital bills. (R. at 494.) Sharon Hall, L.C.S.W., a licensed clinical social worker with Cumberland Mountain, reported that Culbertson's affect was flat and her mood was depressed, but she was goal-directed and she had no hallucinations or delusions. (R. at 494.) Culbertson was well-oriented, but her memory was impaired. (R. at 495.) Culbertson's insight and judgment were good. (R. at 495.)

-8-

On April 30, 2001, Culbertson presented to the emergency room at Russell County Medical Center, ("RCMC"), with complaints of headaches, left eye blurring and pain in her left side. (R. at 150-51.) X-rays of Culbertson's skull were normal. (R. at 149.) She was diagnosed with contusions resulting from a motor vehicle accident. (R. at 150.) On May 1, 2001, Culbertson presented to the emergency room for complaints of nausea and vomiting. (R. at 153-54.) A cranial CT scan showed slight widening of subarachnoid spaces over her cerebral convexity bilaterally, which was consistent with mild atrophy, mild hyperostosis frontalis internus. (R. at 152.) She was diagnosed with muscle strain. (R. at 153.) On May 11, 2001, a CT scan of Culbertson's brain was negative. (R. at 24.) On May 21, 2001, x-rays of Culbertson's facial bones and cervical spine were normal. (R. at 25-26.) On August 12, 2003, Culbertson was admitted to RCMC for complaints of dizziness, vertigo, headache, loss of consciousness, depression and gastroesophageal reflux disease. (R. at 8-18.) Dr. Matthew Cheng, M.D., reported that Culbertson had slightly decreased left hand grip and slightly decreased motor strength of her left arm. (R. at 11.) An MRI of Culbertson's head was performed, which showed some mucosal thickening in both ethmoid sinuses and the left sphenoid and left maxillary sinuses, but no other abnormality. (R. at 8, 14-15.) Culbertson was discharged with a diagnosis of dizziness, depression and gastroesophageal reflux disease. (R. at 8.)

In May 2001, Dr. James E. Grau Jr., O.D., saw Culbertson for her complaints of headaches and blurred vision. (R. at 188.) Examination was normal, and Dr. Grau noted no retinal hole or detachment. (R. at 188.) On June 11, 2001, Dr. Gail J. Grau, O.D., reported that Culbertson had a normal examination, and, again, no retinal hole or detachment was noted. (R. at 183.)

-9-

On June 22, 2001, Dr. R. Scott Macdonald, M.D., a neurologist, evaluated Culbertson for her complaints of numbness, left arm pain and left-sided face pain. (R. at 195-97, 530-32.) Dr. Macdonald reported that Culbertson's memory was intact and her affect was appropriate. (R. at 196, 531.) Dr. Macdonald diagnosed chronic left face and arm pain. (R. at 197, 532.) On July 16, 2001, an electromyogram, ("EMG"), and nerve conduction study of Culbertson's left upper extremity were normal. (R. at 202, 537.) An ultrasound of Culbertson's left neck also was normal. (R. at 540-41.) Culbertson had normal visual evoked response testing bilaterally without evidence of optic neuropathy. (R. at 203, 538.) Culbertson had normal somatosensory evoked response testing from the bilateral median nerves without evidence of disturbance or myelinated sensory pathways through the cervical spinal cords, subcortical or cortical regions of the brain bilaterally. (R. at 204.) An ultrasound of Culbertson's bilateral neck region was normal. (R. at 206.)

On September 11, 2001, Culbertson reported that her headaches were better. (R. at 193, 528.) Dr. Macdonald encouraged Culbertson to resume her normal activities. (R. at 528.) Her motor strength was intact. (R. at 193, 528.) An MRI of Culbertson's brain was normal. (R. at 199, 534.) On October 5, 2001, Dr. Macdonald reported that he found no specific neurological abnormality that would prevent Culbertson from performing full activities. (R. at 192.) On October 15, 2001, Dr. Macdonald advised Culbertson that he could not write her a work excuse. (R. at 192.) On May 10, 2004, Dr. Macdonald saw Culbertson for complaints of pain in her left shoulder, chest and arm with a tingling sensation in her left arm and the left part of her face. (R. at 526.) Culbertson was alert, her speech and gait were normal, and her motor strength was intact in all of her extremities. (R. at 526.) Dr. Macdonald diagnosed chronic left body

-10-

paresthesias and pain. (R. at 526.)

On March 5, 2002, Dr. Thomas E. Roatsey, D.O., saw Culbertson. (R. at 128.) Culbertson reported that her depression was better since taking medication. (R. at 128.) Dr. Roatsey reported that Culbertson could not work on a regular basis due to severe headaches, probable post-concussion syndrome, some nerve damage and neuropathy. (R. at 128.) On June 11, 2002, Dr. Roatsey diagnosed headaches and facial pain and weakness secondary to a motor vehicle accident. (R. at 126.) He reported that Culbertson was unable to work and suggested that she file for disability. (R. at 126.)

On May 20, 2003, Dr. Roatsey completed a medical assessment indicating that Culbertson could occasionally lift and carry items weighing up 20 pounds and frequently lift and carry items weighing up to five pounds. (R. at 31-33.) He indicated that Culbertson could stand and/or walk up to four hours in an eight-hour workday and that she could do so for up to one hour without interruption. (R. at 31.) He indicated that Culbertson could sit for up to four hours in an eight-hour workday and that she could do so for up to two hours without interruption. (R. at 32.) Dr. Roatsey indicated that Culbertson could occasionally climb, stoop, kneel, balance, crouch and crawl. (R. at 32.) He indicated that Culbertson's abilities to reach, to handle, to push and/or pull and to see were affected by her impairments. (R. at 32.) Dr. Roatsey indicated that Culbertson was limited in her abilities to work around heights, moving machinery, temperature extremes, chemicals, dust, noise, fumes and vibration. (R. at 33.) He also indicated that Culbertson's headaches were caused by an increase in stress. (R. at 33.)

-11-

On July 21, 2003, Dr. Roatsey reported that Culbertson was in no acute distress. (R. at 484.) Her lungs were clear, and she had a regular heart rate. (R. at 484.) She had no abnormalities of her extremities. (R. at 484.) On August 12, 2003, Dr. Roatsey reported that Culbertson's examination was normal and that she had no neurological deficits. (R. at 483.) On March 4, 2004, Culbertson's examination was unremarkable. (R. at 482.) On April 22, 2004, Culbertson reported that she was doing "okay." (R. at 481.) On August 3, 2005, Culbertson's examination again was normal. (R. at 680.) On September 22, 2005, Culbertson reported that she was doing well and did not have any problems. (R. at 671.) She denied any headaches, dizziness, chest pain or shortness of breath. (R. at 671.)

On September 6, 2002, Julie Jennings, Ph.D., a state agency psychologist, completed a Psychiatric Review Technique form, ("PRTF"), indicating that Culbertson suffered from a nonsevere affective disorder. (R. at 169-82.) She indicated that Culbertson had mild limitations in her activities of daily living, in maintaining social functioning and in maintaining concentration, persistence or pace. (R. at 179.) Jennings also indicated that Culbertson had not experienced episodes of decompensation. (R. at 179.) This assessment was affirmed by Hugh Tenison, Ph.D., another state agency psychologist, on November 22, 2002. (R. at 169.)

On September 10, 2002, Dr. Donald R. Williams, M.D., a state agency physician, indicated that Culbertson had the residual functional capacity to perform light work. (R. at 231-38.) Dr. Williams indicated that Culbertson should never climb or balance, but that she could frequently stoop, kneel, crouch and crawl. (R. at 233.) He found no manipulative, visual or communicative limitations. (R. at 234-35.) He indicated that Culbertson should avoid all exposure to work hazards, such as

-12-

machinery and heights. (R. at 235.) This assessment was affirmed by Dr. Randall Hays, M.D., another state agency physician, on November 22, 2002. (R. at 238.)

On March 13, 2003, Sharon J. Hughson, Ph.D., a clinical psychologist, evaluated Culbertson at the request of Disability Determination Services. (R. at 270-76.) Culbertson denied any insight or judgment problems. (R. at 271.) She was well-groomed, her speech was normal and she denied any difficulty relating to others. (R. at 272.) Hughson reported that Culbertson's test results were significant for malingering. (R. at 272.) Hughson diagnosed pain disorder associated with both psychological factors and a general medical condition, chronic headaches and malingering. (R. at 275.) Hughson completed a mental assessment indicating that Culbertson had an unlimited ability to follow work rules, to relate to co-workers, to deal with the public, to use judgment, to interact with supervisors, to understand, remember and carry out detailed and simple instructions and to relate predictably in social situations. (R. at 277-79.) Hughson indicated that Culbertson had a more than satisfactory ability to maintain attention and concentration, to understand, remember and carry out complex instructions and to maintain personal appearance. (R. at 278.) She indicated that Culbertson had a satisfactory ability to function independently and to behave in an emotionally stable manner. (R. at 278.) She also indicated that Culbertson had a seriously limited, but not precluded, ability to deal with work stresses and to relate predictably in social situations. (R. at 278.)

On March 10, 2004, Dr. Furrukh S. Malik, M.D., reported that Culbertson was in no acute distress. (R. at 551.) Culbertson was well-oriented, and she had no neurological deficits. (R. at 551.) Dr. Malik diagnosed chest pressure, which was primarily atypical for angina. (R. at 551.) On April 9, 2004, Dr. Malik reported that

Culbertson's motor and sensory examination was normal except for power loss in her left arm. (R. at 547.) Culbertson had a negative stress test, although her symptoms of left arm numbness and weakness were suggestive of radiculopathy with involvment of the brachial plexus nerve roots. (R. at 547.) An MRI did not show any bony abnormalities or nerve entrapment. (R. at 547.) Dr. Malik recommended that Culbertson see a neurologist. (R. at 547.)

Culbertson saw William B. Haynes Jr., M.Ed., a licensed professional counselor, from May 2004 through July 2004. (R. at 556-59.) She was diagnosed with major depression and chronic pain syndrome. (R. at 559.) On June 16, 2004, Haynes reported that Culbertson had a depressed mood and blunted affect. (R. at 557.) Her thought processes were within normal limits, she had no paranoia or delusions and her judgment and insight were fair. (R. at 557.) On July 15, 2004, Haynes reported that Culbertson's mood was depressed and her affect was blunted. (R. at 556.) On July 21, 2004, Haynes completed a mental assessment indicating that Culbertson had a limited but satisfactory ability to follow work rules and to understand, remember and carry out simple job instructions. (R. at 554-55.) He indicated that Culbertson had a seriously limited, but not precluded, ability to relate to co-workers, to use judgment, to interact with supervisors, to understand, remember and carry out detailed instructions, to maintain personal appearance and to relate predictably in social situations. (R. at 554-55.) Haynes indicated that Culbertson had no useful ability to deal with the public, to deal with work stresses, to function independently, to maintain attention/concentration, to understand, remember and carry out complex instructions, to behave in an emotionally stable manner and to demonstrate reliability. (R. at 554-55.)

-14-

On July 19, 2004, Dr. Frank M. Johnson, M.D., a state agency physician, indicated that Culbertson had no severe physical impairment. (R. at 560-67.) This assessment was affirmed by Dr. Richard M. Surrusco, M.D., another state agency physician, on October 12, 2004. (R. at 567.)

On July 22, 2004, Dr. Paul Derden, M.D., examined Culbertson. (R. at 589.) Culbertson was in no acute distress, she was well-oriented and had good heart sounds. (R. at 589.) Dr. Derden diagnosed depression, chronic headaches with blurred vision, vertigo, hiatal hernia and peptic ulcer disease. (R. at 589.) On February 24, 2005, Dr. Derden reported that Culbertson had no abnormalities of the heart, lungs or neck. (R. at 613.) She had normal strength in her extremities and normal sensation in her feet and hands. (R. at 613.)

On August 3, 2004, Joseph Leizer, Ph.D., a state agency psychologist, ("J. Leizer"), completed a PRTF indicating that Culbertson suffered from an affective disorder. (R. at 590-604.) J. Leizer indicated that Culbertson had mild limitations in her activities of daily living and in maintaining social functioning. (R. at 600.) He indicated that Culbertson had moderate limitations in her ability to maintain concentration, persistence or pace. (R. at 600.) He also indicated that Culbertson had not experienced any episodes of decompensation. (R. at 600.) This assessment was affirmed by Howard Leizer, Ph.D., another state agency psychologist, ("H. Leizer"), on October 13, 2004. (R. at 590.)

J. Leizer also completed a mental assessment on August 3, 2004, indicating that Culbertson had moderate limitations in her ability to understand, remember and carry out detailed instructions, to maintain attention and concentration for extended periods

-15-

and to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. (R. at 605-07.) This assessment was affirmed by H. Leizer on October 13, 2004. (R. at 607.)

On July 30, 2005, William E. Stanley, M.Ed., a licensed psychological examiner, and Donald Hiers, Ph.D., a licensed psychologist, evaluated Culbertson. (R. at 619-25.) Culbertson had no problems with her memory. (R. at 621.) The Wechsler Adult Intelligence Scale-Third Edition, ("WAIS-III"), test was administered, and Culbertson obtained a verbal IQ score of 74, a performance IQ score of 75 and a full-scale IQ score of 72, which placed her in the borderline range of intellectual functioning. (R. at 622-23.) Stanley and Hiers diagnosed mild to moderate major depressive disorder, single episode without psychotic features and a moderate generalized anxiety disorder. (R. at 623.) A Global Assessment of Functioning, ("GAF"), score of 50[7] was assessed. (R. at 623.)

Stanley and Hiers completed a mental assessment indicating that Culbertson had an unlimited to more than satisfactory ability to understand, remember and carry out simple job instructions. (R. at 626-28.) They indicated that Culbertson had a more than satisfactory ability to use judgment, to maintain personal appearance and to demonstrate reliability. (R. at 626-27.) They indicated that Culbertson had a more than

---

[7]The GAF scale ranges from zero to 100 and "[c]onsider[s] psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS FOURTH EDITION, ("DSM-IV"), 32 (American Psychiatric Association 1994). A GAF of 41-50 indicates that the individual has "[s]erious symptoms ... OR any serious impairment in social, occupational, or school functioning ...." DSM-IV at 32.

satisfactory to a satisfactory ability to follow work rules and to relate to co-workers. (R. at 626-27.) They indicated that Culbertson had a satisfactory ability to deal with the public, to interact with supervisors, to deal with work stresses, to function independently, to maintain attention/concentration, to understand, remember and carry out detailed instructions, to behave in an emotionally stable manner and to relate predictably in social situations. (R. at 626-27.) They also indicated that Culbertson had a satisfactory ability to a seriously limited, but not precluded, ability to understand, remember and carry out complex instructions. (R. at 627.)

On April 10, 2006, Dr. William Mark Handy, M.D., completed a mental assessment indicating that Culbertson had no useful ability to make occupational, performance or personal-social adjustments. (R. at 693-94.) Dr. Handy also completed an assessment indicating that Culbertson could lift and carry items weighing up to five pounds.[8] (R. at 695.) Dr. Handy indicated that Culbertson should never climb, stoop, kneel, balance, crouch or crawl. (R. at 696.) He indicated that Culbertson's abilities to reach, to handle, to feel, to push, to pull, to see, to hear and to speak were impaired. (R. at 696.) Dr. Handy indicated that Culbertson could not work around heights, moving machinery, temperature extremes, chemicals, dust, noise, fumes, humidity or vibration. (R. at 696.)

### III. Analysis

The Commissioner uses a five-step process in evaluating DIB claims. *See* 20

---

[8]Dr. Handy indicated that Culbertson's abilities to stand, walk and sit were affected by her impairment, however, his handwriting is illegible. (R. at 695.) Thus, Culbertson's limitations in these areas cannot be determined. (R. at 695.)

-17-

C.F.R. § 404.1520 (2007); *see also Heckler v. Campbell*, 461 U.S. 458, 460-62 (1983); *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981). This process requires the Commissioner to consider, in order, whether a claimant 1) is working; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of a listed impairment; 4) can return to her past relevant work; and 5) if not, whether she can perform other work. *See* 20 C.F.R. § 404.1520 (2007). If the Commissioner finds conclusively that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. *See* 20 C.F.R. § 404.1520(a) (2007).

Under this analysis, a claimant has the initial burden of showing that she is unable to return to her past relevant work because of her impairments. Once the claimant establishes a prima facie case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must then establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience and impairments, to perform alternative jobs that exist in the national economy. *See* 42 U.S.C.A. § 423(d)(2)(A) (West 2003 & Supp. 2006); *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983); *Hall v. Harris*, 658 F.2d at 264-65; *Wilson v. Califano*, 617 F.2d 1050, 1053 (4th Cir. 1980).

By decision dated January 26, 2006, the ALJ denied Culbertson's claim. (R. at 370-86.) The ALJ found that the medical evidence established that Culbertson suffered from severe impairments, namely headaches, pain syndrome and depression, but he found that Culbertson did not have an impairment or combination of impairments listed at or medically equal to one listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 385.) The ALJ found that Culbertson retained the residual functional capacity to perform unskilled, low-stress light work that allowed a sit/stand

-18-

option, that did not require her to climb ladders, scaffolds or ropes, that did not expose her to work hazards, that limited her to indoor work and that required only occasional contact with the public. (R. at 385.) Thus, the ALJ found that Culbertson was unable to perform her past relevant work. (R. at 385.) Based on Culbertson's age, education, work history and residual functional capacity and the testimony of a vocational expert, the ALJ found that Culbertson could perform jobs existing in significant numbers in the national economy, such as a nonpostal worker and a hand packer. (R. at 385.) Thus, the ALJ found that Culbertson was not disabled under the Act and was not eligible for benefits. (R. at 385-86.) *See* 20 C.F.R. § 404.1520(g) (2007).

As stated above, the court's function in the case is limited to determining whether substantial evidence exists in the record to support the ALJ's findings. The court must not weigh the evidence, as this court lacks authority to substitute its judgment for that of the Commissioner, provided his decision is supported by substantial evidence. *See Hays*, 907 F.2d at 1456. In determining whether substantial evidence supports the Commissioner's decision, the court also must consider whether the ALJ analyzed all of the relevant evidence and whether the ALJ sufficiently explained his findings and his rationale in crediting evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

Thus, it is the ALJ's responsibility to weigh the evidence, including the medical evidence, in order to resolve any conflicts which might appear therein. *See Hays,* 907 F.2d at 1456; *Taylor v. Weinberger*, 528 F.2d 1153, 1156 (4th Cir. 1975). Furthermore, while an ALJ may not reject medical evidence for no reason or for the wrong reason, *see King v. Califano*, 615 F.2d 1018, 1020 (4th Cir. 1980), an ALJ may, under the regulations, assign no or little weight to a medical opinion, even one from a treating

-19-

source, based on the factors set forth at 20 C.F.R. § 404.1527(d), if he sufficiently explains his rationale and if the record supports his findings.

Culbertson argues that the ALJ erred by failing to adhere to the treating physician rule and give controlling weight to the opinions of Dr. Roatsey, Leblang and Haynes. (Brief In Support Of Plaintiff's Motion For Summary Judgment, ("Plaintiff's Brief"), at 16-20.)

Under 20 C.F.R. § 404.1527(d), the ALJ must give controlling weight to a treating source's opinion if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence of record. Based on my review of the record, I find that the ALJ properly considered the opinions offered by Culbertson's treating and examining physicians and psychologists. In March 2002 and June 2002, Dr. Roatsey reported that Culbertson could not work on a regular basis due to severe headaches, probable post-concussion syndrome, nerve damage and neuropathy. (R. at 126, 128.) Subsequent evidence demonstrated that Culbertson's complaints of headaches diminished. Culbertson did not seek treatment from Dr. Roatsey from March 2004 until August 2005. In September 2005, Culbertson reported that she was doing well and that she did not have any problems. (R. at 671.) She specifically denied any headaches, dizziness, chest pain or shortness of breath. (R. at 671.) Objective medical testing also did not support any permanent disability on the basis of headaches, nerve damage or neuropathy. A CT scan of Culbertson's head performed on July 22, 2004, was normal. (R. at 582-83.) An MRI of Culbertson's cervical spine showed no bony abnormalities or nerve entrapment. (R. at 547.) An MRI and CT scan of Culbertson's brain

-20-

performed on September 9, 2005, were unremarkable. (R. at 642-43.) This objective medical testing was consistent with the reports of Culbertson's physicians, including Dr. Roatsey, who repeatedly indicated that she had no neurological deficits. (R. at 483, 526, 551, 570, 581, 613, 671, 674, 680.)

With regard to Leblang's assessment, there is no indication that Leblang opined that Culbertson was disabled. On May 20, 2003, Leblang indicated that Culbertson had an unlimited to a limited, but satisfactory, ability to understand, remember and carry out simple instructions. (R. at 299, 661.) He indicated that Culbertson had a limited, but satisfactory, ability to function independently and to maintain attention and concentration. (R. at 298-99, 660-61.) Leblang indicated that Culbertson had a limited, but satisfactory, to a seriously limited, but not precluded, ability to maintain personal appearance. (R. at 299, 661.) He indicated that Culbertson had a seriously limited, but not precluded, ability to relate to co-workers, to deal with the public, to use judgment, to interact with supervisors, to deal with work stresses, to understand, remember and carry out detailed instructions, to behave in an emotionally stable manner and to demonstrate reliability. (R. at 298-99, 660-61.) He also indicated that Culbertson had no useful ability to understand, remember and carry out complex instructions. (R. at 299, 661.) Leblang indicated that he had only met with Culbertson on two occasions, and, thus, had a limited database from which to rate her functioning. (R. at 300, 662.) I find that the ALJ adequately accommodated Culbertson's mental limitations in his residual functional capacity assessment by limiting Culbertson to unskilled, low-stress work with only occasional contact with the public. (R. at 385.)

In July 2004, Haynes rated significant limitations in nearly all categories of

-21-

occupational functioning. (R. at 554-55.) The ALJ noted that these limitations were inconsistent with Culbertson's daily activities. (R. at 380-81.) On April 22, 2004, Culbertson reported that she was on the Board of Directors for Castlewood Fire and Rescue. (R. at 459.) She reported that she was able to drive occasionally, read, watch television and grocery shop. (R. at 456-59.) One year before, Culbertson reported to Hughson that she was able to perform a wide range of daily activities, including shopping, cooking, doing housework, visiting with friends, attending doctors appointments, reading and watching television. (R. at 272.) She reported to Hughson that she had no difficulty relating to others. (R. at 275.) Haynes's assessment was inconsistent with the assessments of Hughson, Stanley and Hiers. Hughson opined that Culbertson had an unlimited ability to follow work rules, to relate to co-workers, to deal with the public, to use judgment, to interact with supervisors, to understand, remember and carry out detailed and simple instructions and to relate predictably in social situations. (R. at 277-79.) Hughson indicated that Culbertson had a more than satisfactory ability to maintain attention and concentration, to understand, remember and carry out complex instructions and to maintain personal appearance. (R. at 278.) She indicated that Culbertson had a satisfactory ability to function independently and to behave in an emotionally stable manner. (R. at 278.) She also indicated that Culbertson had a seriously limited, but not precluded, ability to deal with work stresses and to relate predictably in social situations. (R. at 278.)

There is no evidence of any significant deterioration in Culbertson's mental condition in the year between Hughson's and Haynes's assessments. One year after Haynes's assessment, Stanley and Hiers found that Culbertson had an unlimited to a more than satisfactory ability to understand, remember and carry out simple job

Case 2:06-cv-00073-PMS   Document 21   Filed 10/02/07   Page 22 of 24   Pageid#: 101

instructions. (R. at 627.) They indicated that Culbertson had a more than satisfactory ability to use judgment, to maintain personal appearance and to demonstrate reliability. (R. at 626-27.) They indicated that Culbertson had a more than satisfactory to a satisfactory ability to follow work rules and to relate to co-workers. (R. at 626.) They indicated that Culbertson had a satisfactory ability to deal with the public, to interact with supervisors, to deal with work stresses, to function independently, to maintain attention/concentration, to understand, remember and carry out detailed instructions, to behave in an emotionally stable manner and to relate predictably in social situations. (R. at 626-27.) They also indicated that Culbertson had a satisfactory ability to a seriously limited, but not precluded, ability to understand, remember and carry out complex instructions. (R. at 627.)

Accordingly, Haynes's assessment was inconsistent with both Culbertson's daily activities and the other mental assessments of record. Based on this, I find that substantial evidence exists to support the ALJ's finding with regard to Culbertson's residual functional capacity. I also find that substantial evidence exists to support the ALJ's weighing of the medical evidence.

## IV. Conclusion

For the foregoing reasons, Culbertson's motion for summary judgment will be denied, the Commissioner's motion for summary judgment will be granted and the Commissioner's decision denying benefits will be affirmed.

An appropriate order will be entered.

DATED:     This 2nd day of October 2007.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE

-24-